**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| In re: | |
| CALUMET ABRASIVES CO., INC., | Case No. 19-21957-jra |
| Debtor. | Chapter 11 |

**FIRST MIDWEST BANK'S PRELIMINARY OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR USE OF FIRST MIDWEST BANK'S CASH COLLATERAL**

First Midwest Bank, by and through its undersigned counsel, submits this preliminary objection (the "Objection") to the Debtor's Emergency Motion For Use of First Midwest Bank's Cash Collateral [Doc. 10] (the "Motion"),[1] and respectfully states as follows:

**Introduction**

1. The Motion should be denied because it violates Bankruptcy Rule 4001(b) and the Debtor cannot satisfy the requirements for obtaining authority to use cash collateral under section 363 of the Bankruptcy Code. Specifically, the Motion is not accompanied by a proposed form of order, as required by Bankruptcy Rule 4001(b)(1)(A), and the Motion seeks authority to use cash collateral for reasons other than only to avoid immediate and irreparable harm to the estate pending a final hearing as limited by Bankruptcy Rule 4001(b)(2) – namely to pay the purported 50% shareholder, Robert Shindorf, a lucrative salary of $5,000 per week even though he was not receiving any salary from the Debtor prior to the bankruptcy filing.

---
[1] Any capitalized terms not defined herein shall carry the meaning assigned in the Motion.

2.  Additionally, the Debtor cannot satisfy the requirements for use of cash collateral under section 363 of the Bankruptcy Code. First Midwest Bank does not consent to use of cash collateral. Furthermore, the Debtor cannot demonstrate a reasonable likelihood that the Debtor will prevail at the final hearing to establish that First Midwest Bank's interests are adequately protected, as required by sections 363(c)(2)(B), (c)(3) and (e).

3.  Accordingly, the Court should deny the Motion or, at a minimum, limit the Debtor's use of First Midwest Bank's cash collateral to payment of expenses that are necessary to avoid immediate and irreparable harm to the estate pending a final hearing (specifically excluding any salary payments to Mr. Shindorf), conditioning such limited cash use on certain provisions of adequate protection to First Midwest Bank as described below, and scheduling the Motion for final hearing as soon as reasonably practicable, but no later than May 24, 2019.

**Factual Background**

**A.    The First Midwest Bank Loans and Collateral Interest**

4.  Prior to the May 7, 2019 petition date (the "Petition Date"), First Midwest Bank made a loan (the "LOC Loan") to the Debtor pursuant to the terms and conditions of a Business Loan Agreement dated as of August 30, 2012 by and between the Debtor and First Midwest Bank (as amended, restated or replaced from time to time, including most recently by that certain Business Loan Agreement dated as of March 22, 2018 between the Debtor and First Midwest Bank, and that certain Change in Terms Agreement dated as of November 14, 2018, the "LOC Loan Agreement"). The LOC Loan is evidenced by a certain Promissory Note dated as of September 10, 2012 in the original principal amount of $500,000.00 made by the Debtor and

payable to the order of First Midwest Bank (as amended, restated or replaced from time to time, including as increased to $1,000,000.00 and last amended by that certain Change In Terms Agreement dated as of November 14, 2018, the "LOC Note").

5.      The LOC Note is secured by (i) Commercial Security Agreement dated as of August 30, 2012 granting to First Midwest Bank a security interest in the "Collateral" as more particularly set forth therein, executed and delivered by the Debtor in favor of Lender (as amended, restated or replaced from time to time, the "LOC Security Agreement"); (ii) that certain Commercial Guaranty dated as of June 5, 2016, given by John G. Anderson ("Guarantor") in favor of First Midwest Bank (as amended, restated or replaced from time to time, including by that certain Commercial Guaranty dated as of August 4, 2017 given by Guarantor in favor of First Midwest Bank, the "LOC Guaranty") guaranteeing the LOC Loan; and (iii) certain other loan documents evidencing, securing and or guaranteeing the LOC Loan (collectively, the "LOC Loan Documents").

6.      Prior to the Petition Date, First Midwest Bank made a loan (the "Equipment Loan") to the Debtor pursuant to the terms and conditions of a Business Loan Agreement dated as of June 29, 2016 by and between Borrower and First Midwest Bank (as amended, restated or replaced from time to time, the "Equipment Loan Agreement"). The Equipment Loan is evidenced by a certain Promissory Note dated as of June 29, 2016 in the original principal amount of $900,000.00 made by the Debtor and payable to the order of First Midwest Bank (as amended, restated or replaced from time to time, including as amended by that certain Promissory Note dated as of January 1, 2018 in the original principal amount of $896,932.48 made by the Debtor and payable to the order of Lender, the "Equipment Note"). The Equipment Note is secured by (i) Commercial

Security Agreement dated as of June 29, 2016 granting to First Midwest Bank a security interest in the "Collateral" as more particularly set forth therein, executed and delivered by the Debtor in favor of Lender (as amended, restated or replaced from time to time, the "Equipment Security Agreement"); (ii) that certain Commercial Guaranty dated as of June 29, 2016, given by Guarantor in favor of Lender (as amended, restated or replaced from time to time, the "Equipment Guaranty") guaranteeing the Equipment Loan; and (iii) certain other loan documents evidencing, securing and or guaranteeing the Equipment Loan (collectively, the "Equipment Loan Documents" and collectively with the LOC Loan Documents, the "Loan Documents").

7. In short, First Midwest Bank's Collateral under the Loan Documents includes all of the Debtor's personal property including, without limitation, all equipment, inventory, accounts, insurance claims and proceeds, all general intangibles, and all proceeds of the foregoing. First Midwest Bank has a perfected interest in the Collateral by virtue of a UCC-1 financing statement filed with the Indiana Secretary of State on January 4, 2018.

8. The LOC Loan and the Equipment Loan are cross-defaulted and cross-collateralized. As of the Petition Date, the outstanding principal balance of the LOC Loan is $1,000,000.00, plus accrued interest since December 20, 2018, plus such other late fees, costs, fees and expenses, including legal fees and expenses incurred by First Midwest Bank. As of the Petition Date, the outstanding principal balance of the Equipment Loan is $691,396.32, plus accrued interest since April 8, 2019, plus such other late fees, costs, fees and expenses, including legal fees and expenses incurred by First Midwest Bank.

**B.     The Prepetition Default and State Court Litigation**

9.      On March 29, 2019, First Midwest Bank filed a Complaint for Immediate Appointment of a Receiver and for Expedited Hearing (the "State Court Complaint") against the Debtor in the Lake County, Indiana Superior Court (the "State Court"), Case No. 45D10-1903-PL-000212 (the "State Court Action"), along with an Emergency Motion to Appoint Receiver (the "Receiver Motion"). In the State Court Complaint, First Midwest Bank alleged that the Debtor was in default of its loan agreements with First Midwest Bank because, among other things, one of the loans matured on January 5, 2019 and was not repaid, First Midwest Bank discovered that the Debtor transferred more than 25% of its stock, and the Debtor changed the normal operation of its business by removing funds from its bank accounts with First Midwest Bank.

10.     On April 17, 2019, the State Court entered an Agreed Order continuing the Receiver Motion to May 8, 2019, requiring the Debtor to transfer all funds to an account with First Midwest Bank, and providing that the Debtor would continue providing First Midwest Bank's proposed receiver with unfettered access to the Debtor's business and financial information.

11.     Despite the terms of the April 17 Agreed Order, the Debtor never transferred funds to the First Midwest Bank Account. The proposed receiver did, however, have an opportunity to review the Debtor's financial condition enough to determine that the Debtor is not viable as a going concern. But on the eve of the continued hearing on First Midwest's Receiver Motion in the State Court, the Debtor filed this chapter 11 case thereby staying the State Court Action as to the Debtor.

12.     On May 7, the Debtor filed the Motion, seeking authority to use First Midwest Bank's cash collateral. The Debtor contends that the "approximate value of the Banks [sic] Collateral is $3,515,000" and that "the value of the Bank's security interest in Collateral is currently

5

estimated at $1,691,396, plus any amounts owed on the Commercial Guarantee referenced above" which the Debtor states is believed to be $372,792.02. *Id*. at ¶ 6, n. 1. First Midwest Bank believes the Debtor's valuations are grossly inflated and fail to account for the interests of Wintrust Bank in certain equipment.

13. Attached to the Motion as Exhibit B is the Debtor's proposed three-week budget. Based on the inclusion of the week ending May 11 (last week), it appears that the Debtor may have already used First Midwest Bank's cash collateral (including for $75,000 of "material purchases") without First Midwest Bank's consent and without this Court's authorization. First Midwest Bank reserves all of its rights with respect to any unauthorized use of cash collateral by the Debtor.

14. For the week ending May 18 (this week), the proposed budget includes $92,746 for payroll. First Midwest Bank has requested detail on the payroll, and the Debtor's counsel has represented that the payroll amount includes payroll taxes (something that the Debtor has historically failed to timely pay), and a $5,000 weekly salary for Mr. Shindorf, the purported 50% shareholder, president, secretary and treasurer of the Debtor. This substantial proposed payment to an insider should have been clearly highlighted in the Motion. But more importantly, Mr. Shindorf was not receiving any salary from the Debtor in the months leading up to the chapter 11 filing, and it is inappropriate for the Debtor to begin paying Mr. Shindorf $5,000 per week in this chapter 11 case. First Midwest Bank has also requested detail from the Debtor regarding the proposed $75,000 weekly material purchases and is awaiting receipt of that information to determine whether such payments are necessary to avoid immediate and irreparable harm to the Debtor's business.

**Argument**

A.    The Motion Violates Bankruptcy Rule 4001(b)

15.    Bankruptcy Rule 4001(b)(1)(A) provides that "[a] motion for authority to use cash collateral shall be made in accordance with Rule 9014 and *shall be accompanied by a proposed form of order*." *Id*. (emphasis added). The Debtor violated this basic requirement by failing to attach a proposed form of order to the Motion. The proposed form of order is significant because it defines the terms of the Debtor's use of cash collateral and the form of adequate protection provided to First Midwest Bank, and it gives notice of those provisions to the Court, creditors and other parties in interest including the United States Trustee. On May 10, the Debtor's counsel sent First Midwest Bank's counsel a proposed form of stipulation and agreed interim order for use of cash collateral. The Debtor's proposed form of order is not acceptable to First Midwest Bank, and it does not satisfy the Rule's explicit requirement that the proposed form of order must be attached to the Motion. The Motion should be denied for this reason alone.

16.    Bankruptcy Rule 4001(b)(2) provides that the Court may conduct a preliminary hearing before the 14 day period after service of the Motion, "but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." *Id*. First Midwest Bank has requested additional information regarding the $75,000 weekly "material purchases" line item in the budget and reserves the right to challenge whether that amount of spending is necessary to avoid immediate and irreparable harm to the estate. It is clear, however, that starting to pay Mr. Shindorf $5,000 per week when he has not previously received a salary from the Debtor is not necessary to avoid immediate and

irreparable harm to the estate. Presumably, Mr. Shindorf is not going to abandon the Debtor if he does not begin to receive a lucrative salary.

17. The Debtor should not be authorized to pay Mr. Shindorf's proposed new salary or use any cash collateral for reasons that the Debtor cannot demonstrate are necessary to avoid immediate and irreparable harm to the estate.

### B. The Debtor Cannot Demonstrate a Reasonable Likelihood of Prevailing at the Final Hearing.

18. Section 363(c)(2) of the Bankruptcy Code provides that the Debtor may not use cash collateral unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use in accordance with the provisions of section 363. 11 U.S.C. § 363(c). Section 363(e) of the Bankruptcy Code provides that the Court "shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest" held by a secured creditor. 11 U.S.C. § 363(e).

19. First Midwest Bank does not consent to the Debtor's use of its cash collateral, so the Court can only authorize such use on the condition that First Midwest Bank's interests are adequately protected.

20. Moreover, section 363(c)(3) provides that "[i]f the hearing under [section 363(c)(2)(B)] is a preliminary hearing, the court may authorize such use ... only if there is a reasonable likelihood that the [Debtor] will prevail at the final hearing under subsection (e) of section 363.

21. First Midwest Bank submits that the Debtor cannot demonstrate a reasonable likelihood that it will prevail at the final hearing to establish that First Midwest Bank's interests are adequately protected based on its approximations of First Midwest Bank's collateral values

and the budget snapshot that fails to account for an eroding accounts receivable balance and an extremely precarious relationship with its largest customer, 3M.

**C.    The Debtor's Proposed Adequate Protection Terms are Inadequate**

22.    Should the Court decide to authorize any use of First Midwest Bank's cash collateral pending a final hearing, the Debtor's proposed adequate protection terms do not sufficiently protect the interests of First Midwest Bank.   First Midwest Bank requests that any interim order authorizing use of cash collateral be conditioned on the Debtor establishing debtor in possession bank accounts with First Midwest Bank so the accounts can be appropriately monitored, and by adding the following adequate protection provisions:

> As adequate protection for any use or diminution in the value of First Midwest Bank's ("Lender's") interests in the Collateral, including the Cash Collateral, the following relief is hereby granted:
>
> (A)    Retroactive to the Petition Date and without the necessity of any additional documentation or filings, Lender is granted valid, enforceable, non-avoidable, fully perfected replacement liens and security interests of the highest available priority in and upon (i) the Collateral, (ii) any property that the Debtor acquires after the Petition Date including, without limitation, any inventory, work in progress, and accounts receivable generated by the Debtor's postpetition operations, and (iii) any proceeds generated from such property, to the full extent of the value of Lenders' liens and security interests as of the Petition Date.   The liens granted in this paragraph (the "Adequate Protection Liens") shall be subject only to prior perfected and unavoidable liens in property of the Debtor's estate as of the Petition Date.   Moreover, to the extent that the Adequate Protection Liens do not adequately protect Lender from any diminution in the value of the Lender's interests in the Collateral, Lender shall have an allowed claim against the Debtor's estate pursuant to 11 U.S.C. § 507(b) that shall be superior to any unsecured claim, whether an administrative or priority claim, against the Debtor's estate, with the sole exception of quarterly fees

       payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).
- (B) The Debtor shall provide weekly reports to Lender in a format similar to the Budget that compares the budget with actual results and such other reports and financial information as may be requested by Lender.
- (C) Lender shall have complete access to the Debtor's premises for the purpose of inspecting, appraising and otherwise evaluating the Collateral and to the Debtor's books and records. The Debtor shall make its premises available for inspection by Lender's appraiser(s) by no later than 3 days after the entry of this Stipulation and Interim Order. The Debtor shall respond to any formal discovery requests issued by Lender in relation to the Motion within 7 days of service of such requests and make Robert Shindorf and any other witness that it intends to present at the final hearing on the Motion available for depositions at least 3 business days in advance of the final hearing.
- (D) The Debtor shall maintain and keep the Collateral in good condition, repair and working order (normal wear and tear excepted).
- (E) The Debtor shall maintain all insurance that existed as of the Petition Date with respect to the Debtor's business and/or the Collateral.
- (F) With respect to any existing policies of insurance or any new policies or policy renewals covering the Debtor's business and/or the Collateral, the Debtor shall provide Lender with copies of certificates of insurance naming Lender as an additional insured.
- (G) The Debtor shall only use the Collateral for lawful purposes, without violation of any federal, state or local law, statute or ordinance.
- (H) The Debtor shall make every reasonable effort to insure the collection of all pre-petition and post-petition accounts receivable and to preserve, maintain and protection the Lender's Collateral and the property subject to the Adequate Protection Liens.

The Debtor's authority to use the Cash Collateral under this Stipulation and Interim Order shall cease and terminate immediately, and without further notice, upon the earliest of: (a) the date and time set forth below for a final hearing on the use of Cash Collateral; (b) entry of an order converting this case to a case under Chapter 7 of the Bankruptcy Code; (c) entry of an order dismissing this case; (d) entry of an order in this case appointing a trustee under Section 1104 of the Bankruptcy Code; (e) entry of an order in this cause lifting the automatic stay with reference to all or part of the Collateral; or (f) any violation by the Debtor of the terms of this Stipulation and Interim Order.

Nothing contained in this Interim Order shall in any way prejudice or compromise any rights or claims Lender may have in respect of parties other than the Debtor, or the rights, claims and defenses of Lender with respect to the Debtor's request to use Lender's Cash Collateral for any period beyond the term of the Budget and the date

10

set for a final hearing on the Motion. Nor shall anything contained in this Stipulation and Interim Order be deemed a waiver of any rights or claims Lender has under the Loan Documents.

The grant of adequate protection provided herein is without prejudice to the Lender's right to seek additional adequate protection of its interests in the Collateral.

## **Conclusion**

23. The Motion is deficient under Bankruptcy Rule 4001, and the Debtor cannot satisfy the requirements of section 363 of the Bankruptcy Code for authority to use First Midwest Bank's cash collateral in a manner that adequately protects the interests of First Midwest Bank. The Court should deny the Motion accordingly. At a minimum, the Court should only authorize the Debtor's use of cash collateral as needed to avoid immediate and irreparable harm to the estate pending a final hearing. Furthermore, any interim order authorizing cash use should specifically exclude any salary payments to the Debtor's purported shareholder and president, Robert Shindorf, and should include the proposed forms of adequate protection recited above, including that the Debtor establish debtor in possession bank accounts with First Midwest Bank so the accounts can be appropriately monitored. Finally, First Midwest Bank requests that the Court schedule a final hearing on the Motion no later than May 24, 2019 and enter a pretrial order requiring the submission of witness and exhibits lists in advance of the final hearing, and authorizing expedited discovery in advance of such final hearing.

Dated:   May 13, 2019				Respectfully submitted,

						FIRST MIDWEST BANK
						By   */s/ Gordon E. Gouveia*
						        *One of its attorneys*

Gordon E. Gouveia
GOUVEIA & ASSOCIATES, LLC
Attorneys At Law
433 W. 84th Drive Merrillville, IN 46410
Phone: 219.736.6020
Fax: 219.736.2545
E-mail: gm6020@aol.com

## Certificate of Service

On May 13, 2019, I certify that on this date service of a true and complete copy of the above foregoing instrument was made following parties in interest by electronic filing as shown on the Notice of Electronic Filing or by depositing the same in the United States Mail in a properly addressed and stamped envelope.

United States Trustee @ ustpregion10.so.ecf@usdoj.gov
Frederick L. Carpenter, fcarpenter@dfreeland.com
Shawn D. Cox, scox@hodgesdavis.com
Daniel Freeland, dlf9601@aol.com
Jennifer Prokop, jennifer.prokop@usdoj.gov
Sheila A. Ramacci, sar4198@aol.com
Calumet Abrasives Co., Inc. 3039 169th Place Hammond, IN 46323