UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Calumet Abrasives, Co. Inc., ) | CASE NO.: 19-21257 |
| ) | **CHAPTER 11 PROCEEDING** |
| ) | |
| Debtor. ) | |
| ) | |

**DEBTOR'S TRIAL BRIEF IN SUPPORT OF DEBTOR'S MOTION TO USE CASH COLLATERAL AND IN OPPOSITION TO FIRST MIDWEST BANK'S EMERGENCY MOTION FOR ADEQUATE PROTECTION AND CLOSING ARGUMENT**

Comes now, Calumet Abrasives Co., Inc., Debtor and Debtor-in-Possession, by counsel, Daniel L. Freeland & Associates, P.C., and submits this Trial Brief and Closing Argument related to Debtor's Motion to Use Cash Collateral and First Midwest Bank's Motion for Adequate Protection.

**FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY**

1. On May 7, 2019, CABCO filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. ("Petition Date").

2. Following the filing of CABCO's Chapter 11 petition, on May 7, 2019, CABCO filed its Emergency Motion to Use Cash Collateral of First Midwest Bank ("Bank"). (Bankr. Doc.10) The Bank filed its Preliminary Objection to Motion to Use Cash Collateral on May 13, 2019 ("Objection"). (Bankr. Doc. 24). On May 14, 2019 the Court entered an Interim Order Authorizing the Debtor's Use of First Midwest Bank's Cash Collateral. (Bankr. Doc.29). On June 20, 2019, there was entered a Second Stipulated Interim Order Authorizing the Debtors Use of First Midwest Bank's Cash Collateral. (Bankr. Doc 112). On September 11, 2019, the Court entered an Amended

1

Third Stipulated Interim Order Authorizing the Debtors Use of First Midwest Bank's Cash Collateral. (Bankr. Doc.172).

3. On September 30, 2019, First Midwest Bank filed its Motion for Adequate Protection. (Bankr. Doc. 198) ("Adequate Protection Motion") and a Motion to Expedite Hearing on the Adequate Protection Motion (Bankr. Doc. 198).

4. Trial on the Emergency Motion for Use of Cash Collateral filed by CABCO and Motion for Adequate Protection filed by First Midwest commenced on October 3, 2019 and ended on October 10, 2019.

5. Contemporaneously herewith, CABCO filed its Proposed Findings of Fact and Conclusions of Law (Bankr. Doc. ___) ("Debtor's Proposed Findings"). CABCO incorporates all of its Proposed Findings herein.

## JURISDICTION

1. The Court has jurisdiction over these matters pursuant to 28 U.S.C. §157 and §1334 and this is a core preceding under 28 U.S.C. §§157(b)(2)(A), (K) and (M).

2. The venue is proper under 28 U.S.C. §1409.

## ARGUMENT

Under Chapter 11, the purposes of business reorganization are to "relieve the debtor of its pre-petition debts, to free cash flow to meet current operating expenses, and ultimately to permit the debtor to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders." *In re American Mariner Industries, Inc*. 734 F.2d 426 (9th Cir. 1984)(quoting H.R. Rep. No. 595 at 220, 1978 U.S.Code Cong. & Ad. News at 6179). 11 U.S.C. § 363(c)(1) allows a debtor to use, sell or lease property in

the ordinary course of business. *In re: Union - Go Dairy Leasing, LLC,* 2010 Bankr. LEXIS 1468, 2010 WL 1848485 (Bankr. S.D. Ind. 2010). Section 363(c)(2) allows a debtor to use cash collateral (as defined in § 363(a)), but only if (a) the entity that has an interest in the cash collateral consents; or (b) the court authorizes such use in accordance with that section of the Bankruptcy Code. *Id.*

11 U.S.C. § 363(e) provides that when a party in interest in property proposes to use, sell or lease property of the estate in which a creditor has an interest, the court shall, at the request of creditor, "condition such use, sale, or lease as is necessary to provide adequate protection of such interest." Adequate protection must be determined liberally, on a case by case basis, permitting debtors maximum flexibility in structuring a proposal for adequate protection. *Unsec. Creditors' Committee v. Jones Truck Lines, Inc.,* 156 B.R. 608 (W.D.Ark. 1992). A debtor, as the party seeking to use cash collateral, bears the burden of proof that the secured creditors interest are adequately protected. *In re Shivshanker P'ship, LLC,* 517 B.R. 812, 825 (Bankr. E.D. TN 2014).

11 U.S.C. § 361 is the primary provision protecting a secured creditor's interest in its collateral whenever a debtor attempts to use or diminish it over the creditors objection. By its terms, § 361 provides three methods to adequately protect a secured creditors interest:

> (1) making cash payments to creditors to the extent the use, sale or lease under § 363 decreases the value of the creditors interest;
> (2) providing a replacement lien to the extent that the creditor's interest in the collateral has decreased; **or**
> (3) the granting such other relief other than the grant of an administrative expense claim that will result in the indubitable equivalence of such entities interest in such property. 11 U.S.C. § 361(1)-(3)

(Emphasis Added)

The House Report Notes for 11 U.S.C. § 361(3) clearly states that the methods of providing adequate protection "are neither exclusive nor exhaustive. They all rely, however, on the value of the

3

protected entity's interest in the property involved." H.R. Rep. No 95-959, 95th Cong., 1st Sess. 339 reprinted in 2 App. Collier on Bankruptcy (15th Ed.). The Debtor has offered to provide adequate protection for its use of cash collateral pursuant to 11 U.S.C. §361(2) and make cash payments to the Bank, to the extent necessary, for the use of the machinery and equipment pursuant to §361(1).

**I.     The Bank Is Adequately Protected as to the Cash Collateral**

The determination of whether a creditor's interest is adequately protected is not an exact science, nor does it involve a precise arithmetic computation. *Shivshanker* 517 B.R. at 817. By its express terms, 11 U.S.C. § 361 authorizes bankruptcy judges to exercise broad discretion in fashioning the "adequate protection" for the creditor. *In re Jim Kelly Ford, Ltd,* 14 B.R. 812 (N.D. Ill 1981). Adequate protection for the purposes of determining whether a debtor may use cash collateral is afforded a broad interpretation in order to encourage reorganization. *United Sav. Ass'n v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 370, 98 L.Ed 2d 740, 108 S. Ct. 626 (1988).  "In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditors interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects its value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence." *In re Martin,* 761 F.2d 472, 477 (8th Cir. 1985).  If the debtor's proposal provides adequate protection, the request for use of cash collateral should be granted by the bankruptcy court. *Id.*

As of the Petition Date, cash collateral consisted of cash in the bank in the amount of $267,068.72 and accounts receivable in the amount of $368,401.96, for a total cash collateral of $635,410.68 (FMB Ex. 12) (hereinafter "Cash Collateral"). The last reported actual report reflects

that in week 18 (the week ending September 28, 2019) the cash balance was $574,835.00 and the accounts receivable balance was $98,673.00 for a total cash collateral of $673,508.00. This is an increase of $38,097.32. (FMB Ex. 67, FMB Ex. 63 Ex. A).

It is recognized the Debtor must provide adequate protection through periodic cash payments, replacement liens or the "indubitable equivalent" of the creditors interest. 11 U.S.C. § 361. Courts have recognized that adequate protection is satisfied when the debtor reinvests the cash collateral in the operation and maintenance of the business because the value of the secured creditors interest in its collateral will thereby increase. *Fed Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assoc. Ltd. P'ship*, 153 B.R. 204, 214 (N.D. Ill 1993) citing *In re Constable Plaza Assoc*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991).

During the hearing, FMB spent a significant portion of time trying to discredit Shindorf as an individual who was taking advantage of John Anderson in entering into the Sales Documents in December of 2018(FMB Ex. 3). This is unwarranted, as CABCO has consistently, during the period of time while in bankruptcy and under the control of Mr.Shindorf, operated profitably. This can be seen by the fact that the value of cash collateral, $635,410.68 at the time of filing, increased to $673,508.00 as of September 28, 2019. (FMB Ex. 12, FMB Ex. 67, FMB Ex. 63 Ex. A). In addition thereto, CABCO, which had a loss for the year ending December 31, 2018 of over $800,000.00, showed a profit of over $100,000.00 while being in bankruptcy. This is an improvement of the income of CABCO of over $900,000. John Anderson was the individual that had operated CABCO to a loss of $812,000 for the year 2018. He was the one who had asked Shindorf for help. (FMB Ex. 36).

The Bank's constant denigration of Mr. Shindorf regarding his intentions and motives has

no factual basis. The Bank attacks Shindorf based upon his taking of a portion of a deferred salary in late April, 2019. However, the sole evidence that was presented was that by April, 2019 CABCO was profitable. From January 1, 2019 to March 31, 2019, there was a net income of $94,000.00 (FMB Ex. 36 p. 10) and the testimony reflects that April was profitable (10/3/19 Tr. 137).

Contrary to the assertions and innuendos of FMB, it is clear that Shindorf has turned the business around and continues to develop the business of the Company. This has been accomplished notwithstanding the addition of costs incidental to the Chapter 11 proceedings including, but not limited to, attorneys fees, US Trustees fees, adequate protection payments, and the limitations of a weekly budget which required production and shipment based upon a budget rather than based upon the most economical basis. (10/3/19 Tr. 32, 38, 93). It was accomplished with Shindorf's energies and attention being diverted, from focusing on reorganization and correcting CABCO's financial situation, to having to address the voluminous requests of FMB's hired consultant and attorneys. The turnabout of the Company could be even greater if Shindorf were able to fully concentrate on the reorganization. (10/3/19 Tr. 109-110, 182). The fact that CABCO can operate profitably in and of itself provides adequate protection to FMB. *Save Power Limited v. Pursuit Athletic Footwear*, 193 B.R. 713, 715 (Bankr. Del 1996).

CABCO has the ability to attract new customers if there is stability in the business. (10/3/19 Tr. 32). The business is trending up as can be seen from the changes in the budgets (reflected on Debtor's Exhibit 22 and 23) ("Budgets") and the new business that the production manager, Ray Sparks, brought in recently. (10/3/19 Tr. 159).

FMB's consultant, Mr. Jacobson, attempted to discredit the Budgets submitted by CABCO (Debtor Ex. 23) based upon the increased gross profit reflected on that exhibit versus historical

6

numbers prior to August of 2019. He questioned the validity of those numbers. (10/10/19 Tr. 105, 106). Upon cross-examination he refused to acknowledge that the purchase of raw materials by CABCO and passing the exact same cost to the customer, in contrast to subcontracting the production of the product with the customer supplying the raw material, would effect the gross margin. (10/10/19 Tr. 106, 108). However his position is not supportable. Hypothetically, if product was sold to the customer for $100.00, of which $30.00 was labor, $60.00 was product purchased from the customer and $10.00 was profit, the gross margin would be 10%. In contrast, if the customer supplied the raw material, the cost to the customer would be $40.00, of which $30.00 would be the labor and manufacturing the product and $10.00 would be profit. This would set a gross margin of 25%. A review of debtors's proposed Budget reflects a net operating profit each month. The amount generated through this six month period through March 31, 2020 will be sufficient to pay additional US Trustee fees if the amount billed was in excess of the other expenses which were not due and which the Bank's consultant referenced.

The reporting on a weekly basis the Bank has demanded was counterproductive causing excess paperwork and time devoted to reports for FMB consultants and attorneys (10/3/19 Tr. 109-110, 182) and as previously referenced, cost CABCO significant funds by adversely affecting its productivity and its ability to meet customers requirements. (10/3/19 Tr. 30). It has had to slow production to adhere to the weekly budget. (10/3/19 Tr. 64). It is difficult to tell a customer that you can't complete its order because of the fact the budget on a weekly basis only allows you to spend x amount. (10/3/19 Tr. 93). Delivery times have been pushed out because of the inability to respond to a customers need because of limited personnel labor and hours. (10/3/19 Tr. 193). A non-weekly or monthly budget allows for a more accurate accounting and flexibility. (10/3/10 Tr. 164, 165).

The Bankruptcy Court can condition or restrict the use of cash collateral based upon the circumstances of each case. The Court has flexibility in crafting conditions, as none are set forth in the Code, other than the adequate protection requirement. Courts have conditioned the use of cash collateral with requiring adherence to the proposed budget, certain financial reporting, hiring of professionals or even the filing of a plan by a date certain. See *In re Tevoortwis Dairy, LLC*, 2019 Bankr. LEXIS 2779 (E.D. MI 2019); *In re Mahalo Energy (USA) Inc.*, 2009 Bankr. LEXIS 5469 (Bankr.E.D.Ok. 2009); *In re G&S Metal Consultants, Inc.*, 2009 Bankr. LEXIS 5299 (Bankr.N.D.Ind. 2009); *In re Franklin Pembroke Venture II*, 105 B.R. 276 (Bankr. E.D.Penn. 1989). *In re Greenwood Bldg. Supply, Inc.,* 23 B.R. 720 (Bankr. W.D. MO 1982)*; In re Boulder Crossroads, LLC,* 2009 Bankr. LEXIS 4892 (Bankr, W.D. TX 2009*); In re FKF Madison Park Grp. Owner,* 2011 Bankr. LEXIS 5814 (Bankr. DE 2011)*(***Monthly** comparison reports required*)(Emphasis Added). This Court has the power to impose any restrictions it deems necessary to amend the proposal of CABCO.

CABCO proposes the following conditions and requirements: (A) That FMB be granted a replacement lien on all receivables and cash up to the amount of $636,410.68, the balance of cash collateral as of the petition date;(B) that it report on a monthly basis the current balance of cash and accounts receivable; (C) that in the event the balance of cash and accounts receivable diminishes below the $635,410.68 amount, it will notify FMB and the Court; (D) that it will amend its Budget to reflect current orders and expenditures on a monthly basis going forward; (E) that it will not expend any funds on any item not included in its Budget without the consent of FMB or the authority of this Court; (F) it will grant to FMB a postpetition security interest in any unencumbered assets to the extent that there is a shortfall in cash collateral versus the amount as of the date of

filing; and (G) it will grant FMB, or its agents, complete and full access to the banking and financial records of CABCO; and, (H) if requested by FMB, CABCO shall grant remote access to the Bank's employees or representatives of such records. All of the same is more than sufficient to adequately protect the Bank's interest in the cash collateral.

Mr. Shindorf testified that without the use of cash collateral, the Debtor will be unable to pay employees and salaries, suppliers, shippers, or taxes and other operating expenses. (10/3/19 Tr. 111). Effectively, the Debtor would not be viable going forward. Therefore, the Debtor respectfully requests the Court authorize the Debtor to use cash collateral, with the conditions and set forth herein,

## II.    The Bank's Request in its Adequate Protection Motion Should be Denied

On September 30, 2019, the Bank filed its Motion for Adequate Protection (Bankr.Doc. 198). To establish its entitlement to an adequate protection claim, FMB must show that the aggregate value of its collateral (machinery and equipment herein) diminished, and continues to diminish, from the Petition Date. The Bank is only entitled to adequate protection, if at all, to the extent of the value of its interest in the machinery and equipment as of the Petition Date. 11 U.S.C. §361. *Official Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Capital)*, 501 B.R. 549 (Bankr. S.D.N.Y. 2013). As explained in *In re Capital*:

> The Supreme Court has explained that the phrase "value of such entity's interest" in section 361 means the same as the phrase "value of such creditor's interest" in section 506(a); the value of the collateral. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Thus, the question becomes how to value the JSN Collateral as of the Petition Date. To answer this question, the Court looks to valuation principles under section 506(a). *See In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72, 74 (1st Cir. 1995)(stating that "a valuation for §361 [i.e. adequate protection] purposes necessarily looks to §506(a) for determination of the amount of a secured claim").
> 
> *In re Capital*, 501 B.R. at 592.

The ultimate burden of persuasion is upon the creditor to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim. *In re Heritage Highgate, Inc*., 679 F.3d 132, 140 (3rd Cir. 2012). It is only once the amount and extent of the secured claim has been set that the burden shifts to a debtor seeking to use, sell, lease or otherwise encumber the lender's collateral under section 363 of the Code to prove that the secured creditor's interest will be adequately protected. *In re Capital*, 501 B.R. at 590, *citing Wilmington Trust Co. v. AMR Corp*, 490 B.R. 470, 477-78 (S.D.N.Y. 2013)(holding that the creditor seeking adequate protection "need only establish the validity of its interest in the collateral, while the Debtor bears the initial burden of proof as to the issue of adequate protection). In this case, the Bank has failed to carry its burden of presenting **any** evidence as to the value of its collateral (equipment and machinery specifically). In this case, the burden never actually shifted to CABCO to prove adequate protection is required in order for the Debtor to be able to use the collateral under §363 of the Code. If the value of the collateral is not declining, a debtor need do nothing and need not pay any adequate protection. *In re Ramco Well Service, Inc.,* 32 B.R. 525 (Bankr. W.D. Okl. 1983). In this case, FMB failed to provide any evidence of value or diminution in the value of the collateral (machinery and equipment), which would warrant the payment of any adequate protection payments. As set forth more fully below, a review of the evidence presented by the Bank and by the Bank's consultant, Mr. Jacobson, reflects the Bank failed to carry its burden in establishing the value of its interest in the collateral. As such, the Bank's Adequate Protection Motion must be denied.

**Sandor Jacobson-** Mr. Jacobson is the consultant to First Midwest Bank. Mr. Jacobson initially got involved with the case in order to be appointed as a state court receiver for CABCO, but the state court never actually determined if he should be appointed as receiver because of the

Debtor's bankruptcy filing. (10/10/19 Tr. 5 and 7). Mr. Jacobson is a certified public accountant since 2010 and has been a management consultant since 2003. (10/10/19 Tr. 7). He is neither an appraiser nor qualified to provide expert testimony or lay testimony on the valuation of the machinery and equipment.

Mr. Jacobson did not testify as to the actual value of the Bank's lien in the collateral, nor the actual fair market value of the equipment and inventory. Mr. Jacobson, rather, looked at the "historic depreciation expense on the income statement and the accumulated depreciation on the balance sheet" of all of the fixed assets of the company (including office furniture and equipment, leasehold improvements on two buildings, machinery and equipment, vehicles and accumulated depreciation) (10/10/19 Tr. 29, 30), and factored that in with the monthly principal and interest payments on the term loan and depreciation being booked by debtor's financial statements and arrived at $15,000 a month as adequate protection payments. (10/10/19 Tr. 34). Jacobson did not provide testimony as to the actual fair market value of the equipment and inventory, but rather just provided the net book value of the fixed assets by subtracting accumulated depreciation looking at various documents and worksheets of CABCO that he did not prepare (10/10/19 Tr. 29). The Depreciation Expense and Fixed Asset Balance sheet prepared and relied upon by Mr. Jacobson reflects that in the category of machinery and equipment, the value of Debtor's machinery and equipment increased from $6,084,453 January, 2018 to $6,195,795 in July, 2019. (FMB Ex.56). Thus, if the value of the collateral (as the Bank presented it) is increasing, not decreasing, than no adequate protection payments would be needed as replacement liens and the equity cushion on the collateral would suffice. Clearly this report, prepared by Mr. Jacobson, is of no probative value, as it presumes values that are not supported by any evidence. By extension, the depreciation amounts listed on FMB Ex.

56, is unreliable, as it shows depreciation of $21,750 per month, despite the fact the book value of said collateral is going up (on all assets, not just machinery and equipment). This in no way supports or reflects the actual diminution in value of the machinery and equipment. Mr. Jacobson testified that this viability assessment (FMB Ex. 56) has nothing to do with the Debtor's performance or asset value post petition (10/3/19 Tr. 89). The deprecation plays no part in what the actual fair market value of the assets are (or were as of the Petition Date) and what the diminution of value for the sake of calculating the necessary adequate protection payments, if any, are. Valuation for adequate protection purposes covers the period between the date of the petition and the confirmation of the plan. *In re Snider Farms, Inc.* 79 B.R. 801 (Bankr. N.D.Ind. 1987). Valuation for the different purposes of determining adequate protection under §361, best interest of creditors tests and "cramdown" at hearing to confirm a plan requires different valuation criteria. *Id.*

Under 11 U.S.C. § 361, adequate protection is granted to compensate a secured creditor for any decrease in "value" which may result from the retention of property by a debtor. *In re WPRV-TV, Inc.,* 102 B.R. 228, 230 (Bankr. E.D. OK 1988). For § 361 adequate protection purposes, valuation is viewed from a creditors perspective - i.e. is the creditor adequately protected and what would it receive for the equipment if allowed to repossess it? *Id.* Normally value would be predicated upon "used" market value. *Id.* The value relevant for adequate protection purposes is not book value - it is liquidation value realizable by the secured creditor. *In re Ralar Distribs., Inc*., 166 B.R. 3, 7 (Bankr.Mass. 1994).*See also Sharon Steel Corp. v. Citibank, N.A. (In re Sharon Steel Corp.)*, 159 B.R. 165, 169 (Bankr.W.D.Pa. 1993)(using liquidation value for adequate protection purposes).

FMB makes the argument that the straight line depreciation of the machinery and equipment taken from the Debtor's books is the same calculation as the diminution in value of the collateral for

12

adequate protection purposes. However, a depreciation expense taken for tax or other purposes does not constitute evidence that the collateral is declining in value. *In re ELMIRA LITHO, Inc.*, 174 B.R. 892 (Bankr. S.D.N.Y 1994). Conversely, fully depreciated assets may continue to decline in value. *Id.* Depreciation is an accounting concept that does not necessarily correspond to the actual diminution in value:

> "As a matter of accounting theory, depreciation is simply an accounting devise intended to allocate the cost of using an asset to the periods in which that use contributes to revenue by approximating the gradual diminution in value of the asset of over time due to age, wear and tear and obsolescence." *Hawkins v, C.I R.*, 713 F.2d 347, 351 (8th Cir. 1983). "Depreciation is a process of estimated allocation which does not take account of fluctuation in valuation through market appreciations," *Fribourg Navigation Co. V. C.I.R.*, 383 U.S. 272, 86 S.Ct. 862, 15 L.Ed. 2d 751 (1966). *Williams v. L& S Industries, Inc*., 60 Bankr. 937, 942 (Bankr. N.D.Ill. 1986)."
>
> *ELMIRA,* 174 B.R. at 33.

In *ELMIRA*, the creditor failed to demonstrate a correlation between the amount of the depreciation that the Debtor deducted for tax and accounting purposes and the actual decline in the market value of its collateral. *Id.* Similar to the case in *ELMIRA*, Mr. Jacobson testified that although there may be some correlations between the depreciation or what an item is being carried on the books at, there is no evidence that depreciation has any direct relationship to the diminution of value of any piece of equipment. (10/10/19 Tr. 90-91). Further, Mr. Jacobson testified that CABCO used a straight line depreciation method, which is what he used to determine the $15,000 a month was an appropriate monthly amount of adequate protection payments. (10/10/19 Tr. 90). Just as the Court in *ELMIRA* rejected this calculation based upon straight line depreciation, the Court should reject Mr. Jacobson's testimony as it relates to the diminution in value of the assets as (1) Mr. Jacobson had no actual knowledge of the actual value of the equipment and inventory, (2) Mr. Jacobson was not qualified to, nor did he, value the equipment and inventory; (3) Mr. Jacobson's

13

testimony regarding depreciation is based upon faulty initial valuation numbers based upon book value of the equipment and inventory, not actual fair market value, and (4) Mr. Jacobson's assumption that depreciation equals diminution is not supported by law. In as much as the Bank did not provide any valuation testimony or evidence which went toward the actual fair market value of the equipment and machinery, the Bank did not carry its burden of showing it is entitled to adequate protection at all.

### III. If Adequate Protection Payments are Required Under §361for the Use of the Machinery and Equipment, Debtor has Already Overpaid and is Not Required to Make any Further Adequate Protection Payments

To the extent any adequate protection payments are necessary and the Court finds the Bank carried its burden with regards to establishing value of its secured claim, the parties disagree on the appropriate amount of adequate protection that CABCO must provide to the Bank for the use of its machinery and equipment collateral. The Bank asserts the proper amount of the adequate protection payments to be $15,000 per month, based upon the testimony of Mr. Jacobson, the Bank's consultant. (10/10/19 Tr. 27) The Debtor asserts the proper amount of adequate protection to be paid (or which should have already been paid) to be $750 a week. The Court must weigh the evidence to determine what amount, if any, is required to be paid as adequate protection.

**Sandor Jacobson -** For the above states reasons as it relates to both the valuation and the diminution in value issues, Mr. Jacobson's testimony provides no probative value and should be disregarded by the Court in determining the amount of adequate protection the Bank is entitled to, if any.

**Robert Shindorf** - Unlike Mr. Jacobson, Robert Shindorf is a fifty (50) percent owner of CABCO, is the sole member of CABCO's board of directors and oversees the day to day operation of CABCO. (10/3/19 Tr.27-28, FMB Ex. 3). He is the owner of other abrasive companies and is in charge of

purchasing the types of equipment owned by CABCO in the small abrasive industry. (10/3/19 Tr. 72). Likewise, Mr. Shindorf has consulted with approximately 1,800 companies, some of who are in the same business as the Debtor, and has helped them come up with the fair market value, or an orderly liquidation value, of the equipment being utilized. (10/3/19 Tr. 73).

Mr. Shindorf's testimony met the standard for admissibility of expert witness testimony as articulated under Federal Rule of Evidence 702. This Rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

A trial court has considerable discretion to admit or exclude expert testimony under Rule 702. *Gen'l Elec. Co. v. Joiner,* 522 U.S. 136, 138-139, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997). The first prong of Rule 702 evaluates the reliability of the testimony and the second prong the testimony's relevance – whether the testimony assists the trial with its analysis of any of the issues. *In re Fed Ex Ground Package Sys.,* 2007 US. Dist. Lexis 76798 (N.D. Ind. 2007) citing *Ammons v. Aramark Uniform Servs. Inc.,* 368 F. 3d. 809, 816 (7th Cir. 2004). A witness may qualify as an "expert" witness through knowledge, skill, experience, training or education. *Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 591 (7th Cir. 2000)*; Ellis v. K-Lan Co.*, 695 F.2d. 157, 162 (5th Cir. 1983); *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). Shindorf qualifies as an expert

for the purposes of determining valuation of the collateral through his knowledge, skill and experience.

Even, assuming arguendo, the Court does not qualify Shindorf's testimony as "expert" testimony under Federal Rules of Evidence 702, Shindorf was equally qualified to testify as to valuation and diminution of value as a lay witness under Federal Rules of Evidence 701, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The difference between an expert witness and an ordinary witness is that the former is allowed to offer an opinion while the later is confined to testifying from personal knowledge. *United States v. Williams,* 81 F.3d 1434, 1442 (7th Cir. 1996). It is well settled in Indiana, as in the Seventh Circuit, that a homeowner can testify as to the value of his property and his testimony must be based upon personal knowledge. *Cunningham v. Masterwear, Inc.,* 2008 U.S. Dist. Lexis 21951 (S.D. Ind. 2008). A property owner is competent to testify to the value of his or her property. *Id.* This is so because the owner is thought to be familiar with the property and able to render a helpful opinion. As long as the testimony is based upon his or her own knowledge, the property owner may testify about the value or diminished value of the subject property. *Id.*  This lay owner testimony rule is equally applicable to the owner of personal property. *See In re Smith,* 313 B.R. 785 (Bankr. N.D. Ind. 2004)("The admissibility of a debtor owner's testimony under FRE 701(a) has a rational basis based

16

on personal factual investigation").

The Debtor is the owner of the collateral and Mr. Shindorf is the fifty percent (50%) owner of the Debtor. Mr. Shindorf testified as to the valuation of the collateral as an owner of the collateral with personal knowledge of the collateral, its condition and the market for the purchase or sale of such collateral. Thus, Mr. Shindorf's opinion of value and diminution of value, whether expert under FRE 701 or lay under Fed. Rule 702 is based on personal knowledge and is admissible over the Bank's Objection.

Mr. Shindorf testified that the orderly liquidation/fair market value of all of the machinery and equipment was around $460,000.00. (10/3/19 Tr. 98).   This is consistent with the Debtor's schedules that lists value of machinery and equipment at $461,900.  (FMB Ex. 12).  Included in this equipment is equipment not secured first by the Bank, but rather is liened first by Wintrust Capital (10/10/19 Tr. 34, FMB Ex.12). Mr. Shindorf discounted the total value of the machinery and equipment that FMB has the first lien on by approximately $130,000, which is the approximate value of the equipment Wintrust Capital has the first lien on.  (10/3/19 Tr.105, FMB Ex. 12).   Thus, the value of the machinery and equipment the Bank has the first lien upon that the Debtor might have to pay adequate protection on is $330,000.00.   (10/3/19 Tr. 105).

Mr. Shindorf also testified the value of this $330,000 in machinery and equipment in five years is anticipated to be $140,000.00.   (10/3/19 Tr. 106).  The Debtor proposed to pay adequate protection in the amount of $750 per month, calculated as follows:

```
 $ 460,000.00 - Petition date value of all equipment
-  130,000.00 - removal of Wintrust collateral
 $ 330,000.00 - value of First Midwest collateral
-  140,000.00 - value of First Midwest collateral in five years
 $ 190,000.00 - diminution in value over 5 years - A/P
÷       260  - 260 weeks in 5 year period
```

       $    730.77  - Weekly adequate protection payment to First Midwest Bank

  The proper amount to be paid, if any, would be $750 a week as adequate protection from the Petition Date through March 31, 2020. From the Petition Date of May 7, 2019, through March 31, 2020, the maximum adequate protection which would need to be paid for the use of the machinery and equipment would be $34,500.00 (46 weeks x $750 = $34,500). Since the Petition Date, the Debtor paid approximately $88,000 in adequate protection payments, consisting of $71,000 in direct payments to the Bank and $17,000 to Lake County for property taxes that were not the responsibility of the Debtor to pay. (10/3/19 Tr. 95). Thus, no matter the calculation, the Debtor, having already paid $88,000.00, has over paid its adequate protection through March 30, 2020, and beyond. (10/3/19 Tr. 106). Likewise, the Debtor has built into its budget $3,914 for equipment repairs and maintenance of the property in order to prevent any extreme diminution in value to the equipment. (Debtor Ex. 23, 10/3/19 Tr.110) Further, Debtor has agreed and has budgeted to continue to maintain insurance policies on the equipment. (Debtor Ex. 23, 10/3/19 Tr. 111).

  In sum, Mr. Shindorf was qualified to testify as both an expert and/or a lay witness based upon his personal knowledge as both an owner of the equipment and his knowledge of the industry as to the value and diminution in value of the machinery and equipment. His calculation of $750 per week adequate protection for the period of time from the Petition Date through March 31, 2020, along with the agreement for the Debtor to continue to maintain and insure the machinery and equipment, is sufficient to adequately protect the Bank against any diminution in value over the relevant time period. The Debtor has already paid in excess of the amount needed to adequate protect the property through March 31, 2020, and should be given a credit for all payments made without the need for any further adequate protection payments being required through March 31, 2020. The Bank

presented no evidence as to valuation of the machinery and equipment and presented no calculation of diminution of value, other than a straight line deprecation schedule based upon presumed book value of the machinery and equipment, along with the principal and interest amount owed on the term note. When evaluating all of the evidence, the Court should find Mr. Shindorf's testimony to be compelling, relevant and admissible. Conversely, the Court should find Mr. Jacobson's testimony to be irrelevant, and off point to any of the facts when determining diminution in value.

## CONCLUSION

As of the Petition Date, cash collateral consisted of cash in the bank in the amount of $267,068.72 and accounts receivable in the amount of $368,401.96, for a total cash collateral of $635,410.68. The Debtor has proposed to provide adequate protection in the form of a replacement lien on the Debtor's post petition accounts and account receivables up to the amount of $635,410.72, along with the following conditions: (A) that it report on a monthly basis the current balance of cash and accounts receivable; (B) that in the event the balance of cash and accounts receivable diminishes below the $635,410.68 amount, it will notify FMB and the Court; (C) that it will amend its Budget to reflect current orders and expenditures on a monthly basis going forward; (D) that it will not expend any funds on any item not included in its Budget without the consent of FMB or the authority of this Court; (E) it will grant to FMB a postpetition security interest in any unencumbered assets to the extent that there is a shortfall in cash collateral versus the amount as of the date of filing; and (F) it will grant FMB, or its agents, complete and full access to the account records of CABCO and, (G) if requested by FMB, CABCO shall grant remote access to the Bank's employees or representatives. As to the use of the equipment and machinery, Debtor asserts the Bank failed to carry its burden of showing it is entitled to adequate protection, and, therefore, does not believe adequate protection

payments should be required at this time. However, assuming arguendo the Court determines the Bank did carry it's burden and adequate protection payments are required, said payments should be in the amount of no more than $750. In as much as the Debtor has already over paid adequate protection by more than $71,000 from the Petition Date through September 331, 2019, the Debtor should be allowed to apply the over payment to future adequate protection payments required in the amount of $750 a month through March 31, 2020.

WHEREFORE, Debtor prays the Court authorize it to use the Bank's cash collateral under the terms and conditions set forth herein and deny the Bank's Motion for Adequate Protection as it relates to the machinery and equipment, and for all other relief deemed just and proper in the premises.

Respectfully submitted:

**DANIEL L. FREELAND & ASSOCIATES, P.C.**

*/s/ Daniel L. Freeland*
Daniel L. Freeland
Attorney for Defendant
9105 Indianapolis Blvd.
Highland, IN 46322
PH: (219) 922-0800

### CERTIFICATE OF SERVICE

I hereby certify that on the 31stday of October, 2019, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF System, which sent notification of such filing to all counsel of record.

*/s/ Daniel L. Freeland*
Daniel L. Freeland